561 So.2d 253 (1990)
Gene D. BROWN, et al., Petitioners,
v.
ST. GEORGE ISLAND, LTD., Etc., et al., Respondents.
Nos. 74571, 74598.
Supreme Court of Florida.
April 19, 1990.
Fred M. Johnson of Fuller, Johnson & Farrell, P.A., Tallahassee, for petitioners.
C. Edwin Rude, Jr., Margaret A. McCall and Robert M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for respondents.
GRIMES, Justice.
Petitioners seek review of the decisions in St. George Island, Ltd. v. Rudd, 547 So.2d 958 (Fla. 1st DCA 1989), and St. George Island, Ltd. v. Rudd, 547 So.2d 961 *254 (Fla. 1st DCA 1989), wherein the district court of appeal certified the unarticulated question of how to interpret section 38.10, Florida Statutes (1989). We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. See Rupp v. Jackson, 238 So.2d 86 (Fla. 1970).
These cases arose from ongoing litigation between Gene D. Brown and John R. Stocks.[1] In 1984, Brown filed an action against Stocks for foreclosure and other relief (suit I). Judge Kenneth Cooksey was assigned to the case, which proceeded to nonjury trial. Judge Cooksey ruled in favor of Brown and entered a judgment against Stocks for $1,216,516.11. More than two months later, Stocks moved to disqualify Judge Cooksey. That motion and a later amended motion alleged that Judge Cooksey's son worked for Brown, that the judge and Brown had dined together, that Brown's employees had boarded up Judge Cooksey's beachfront house, and that Brown and the judge had taken a fishing trip together. Judge Cooksey denied the motion. Stocks sought prohibition in the First District Court of Appeal, which denied the writ.
Less than three weeks later, Stocks filed a "Motion for Recusal from Further Proceedings," seeking to stay the judgment and to have Judge Cooksey recuse himself on the ground that Stocks had prejudiced himself in the eyes of the judge by trying to have him recused in earlier proceedings. Shortly thereafter, Stocks filed a suit collaterally attacking the judgment previously entered by Judge Cooksey, alleging "fraud, bias and deceit" on the part of the judge. This suit was also assigned to Judge Cooksey (suit II). At this point, Judge Cooksey entered an order recusing himself from the collateral action for the stated reason that in view of the allegations of the complaint, he would not feel comfortable sitting as the judge. Ultimately, Judge Dedee S. Costello of the First Judicial Circuit was assigned to the collateral action. She dismissed the case with prejudice and the judgment was affirmed on appeal.
Judge Cooksey also entered an order recusing himself in suit I, reciting that because of the allegations in suit II which seriously impugn his integrity, he "would not feel comfortable proceeding further in this case" even though the allegations were untrue. Meanwhile, Brown and Stocks became involved in still another lawsuit, and the case was also assigned to Judge Cooksey (suit III). Judge Cooksey recused himself from this case on the premise that he had already recused himself from other cases "wherein certain of the parties to this cause were also parties in those causes." Eventually, this Court assigned retired Circuit Judge John A. Rudd to all related litigation involving Brown and Stocks.[2]
In 1989, Stocks moved to disqualify Judge Rudd from hearing suits I and III, invoking section 38.10. According to the motions, Judge Rudd had made derogatory remarks concerning Stocks' veracity during a hearing in suit I. Judge Rudd denied the motions. Stocks then filed a petition in the district court of appeal seeking to prohibit Judge Rudd from further presiding in suits I and III. Stocks contended that under section 38.10 Judge Rudd had to accept the truth of the allegations of motions for recusal and that such allegations presented a legal basis for recusal. Brown argued that Stocks had previously secured the recusal of Judge Cooksey as well as all other judges of the Second Judicial Circuit and that as a consequence Judge Rudd had to disqualify himself under section 38.10 only if he were to admit that he did not "stand fair and impartial between the parties."
The district court of appeal reasoned that the second disqualification provision of section 38.10 only became applicable when there had been a prior disqualification under section 38.02, Florida Statutes (1989), and that neither of Judge Cooksey's disqualifications had taken place under section *255 38.02.[3] The court held that the allegations of Stocks' motions were legally sufficient under the first portion of section 38.10 and issued writs of prohibition, thereby disqualifying Judge Rudd from further participation in both suits.
There are two statutes which authorize a party to seek to disqualify a judge. Section 38.02 states that a party may show by a suggestion that the judge or the judge's relative is a party or is interested in the result of the case, that the judge is related to one of the attorneys, or that the judge is a material witness. That statute provides that if the truth of the suggestion appears from the record, the judge shall disqualify himself. If the truth of the suggestion does not appear from the record, the judge may receive affidavits to determine the truth or falsity of the suggestion and enter an order accordingly.
Section 38.10 reads as follows:
Disqualification of judge for prejudice; application; affidavits; etc.  Whenever a party to any action or proceeding makes and files an affidavit stating that he fears he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists and shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. However, when any party to any action has suggested the disqualification of a trial judge and an order has been made admitting the disqualification of such judge and another judge has been assigned and transferred to act in lieu of the judge so held to be disqualified, the judge so assigned and transferred is not disqualified on account of alleged prejudice against the party making the suggestion in the first instance, or in favor of the adverse party, unless such judge admits and holds that it is then a fact that he does not stand fair and impartial between the parties. If such judge holds, rules, and adjudges that he does stand fair and impartial as between the parties and their respective interests, he shall cause such ruling to be entered on the minutes of the court and shall proceed to preside as judge in the pending cause. The ruling of such judge may be assigned as error and may be reviewed as are other rulings of the trial court.
When a party seeks to disqualify a judge under section 38.10, the judge cannot pass on the truth of the statements of fact set forth in the affidavit. State v. Dewell, 131 Fla. 566, 179 So. 695 (1938). The facts and reasons for the belief of prejudice must be taken as true, and the judge may only pass on the legal sufficiency of the motion and supporting affidavits to invoke the statute. Raybon v. Burnette, 135 So.2d 228 (Fla. 2d DCA 1961). Section 38.10 creates a substantive right to seek the disqualification of a trial judge, but the process of the disqualification is procedural. Livingston v. State, 441 So.2d 1083 (Fla. 1983). Thus, Florida Rule of Civil Procedure 1.432 and Florida Rule of Criminal Procedure 3.230 govern the procedural aspects of disqualification.
The issue which prompted the district court of appeal to certify these cases is whether the latter portion of section 38.10 relating to a second disqualification refers to a previous disqualification under section 38.02 or to a previous disqualification under section 38.10. The court below first pointed to the latter portion of section 38.10 which refers to a situation in which a party once before "has suggested the disqualification of a trial judge." The court reasoned that this must refer to a previous *256 disqualification under section 38.02 which expressly provides for a suggestion of disqualification rather than the first portion of section 38.10 which does not contain the word "suggestion."
With all due respect, we cannot accept this analysis. Section 38.10 was passed as a single section containing only five sentences. There is no reason to believe that the last three sentences do not modify the first two sentences. Moreover, the use of the words "suggested the disqualification" in the second portion of the statute is not inconsistent with the language of the first portion which calls for the judge's disqualification whenever a party "makes and files an affidavit stating that he fears he will not receive a fair trial." In any event, the legislature could not have intended the latter portion of section 38.10 to refer to section 38.02 because section 38.02 did not become law until ten years after section 38.10 was enacted.[4] Thus, we hold that when the latter portion of section 38.10 refers to a prior disqualification, it refers to a disqualification accomplished pursuant to the first portion of section 38.10. As a necessary corollary, this means that disqualifications under section 38.02 are irrelevant to section 38.10 and that a subsequent disqualification under section 38.02 shall be treated in the same manner as an initial disqualification under that statute.[5]
Notwithstanding our construction of section 38.10, Stocks advances several additional reasons why the second portion of section 38.10 did not apply to his efforts to disqualify Judge Rudd. First, we reject his contention that the latter portion of section 38.10 pertaining to a second disqualification is invalid because its provisions are not contained in Florida Rule of Civil Procedure 1.432. The circumstances under which a party is entitled to seek a second disqualification are substantive rather than procedural and, therefore, the statute controls. Likewise, we reject Stocks' argument that the requirements for the second disqualification pertain only to the judge immediately appointed to the case following the first disqualification. We believe that the legislature intended that a party should have only one unfettered right to obtain a judge's disqualification under section 38.10. When a party has obtained the disqualification of a judge under section 38.10, that party's subsequent effort to disqualify another judge under the same statute is subject to the conditions of the latter portion of that statute regardless of whether an intervening judge has presided.
Finally, Stocks argues that the latter portion of section 38.10 does not apply to the disqualification of Judge Rudd because no judge in either case had been previously disqualified on his suggestion pursuant to the first portion of section 38.10. The record supports this contention. In suit I, Stocks originally moved to disqualify Judge Cooksey, invoking the provisions of both sections 38.02 and 38.10,[6] but this motion had been denied. By denying prohibition, the First District Court of Appeal confirmed the correctness of this ruling. It would be unrealistic to conclude that Judge Cooksey then decided to recuse himself because Stocks thereafter filed a subsequent unsworn motion for recusal grounded upon the remarkable proposition that because Stocks had unsuccessfully tried to get him recused in the past, Judge Cooksey must now be prejudiced against him. It is obvious that Judge Cooksey recused himself in both suits I and III because of the allegations directly impugning his integrity which were contained in *257 the complaint filed in suit II. A voluntary disqualification does not bring into play the second portion of section 38.10. Thus, it is necessary to analyze Stocks' motions to disqualify Judge Rudd under the first portion of section 38.10.
Stocks asserted that in a hearing in suit I directed toward determining whether certain land was subject to the lien of the prior judgment, an attorney sought to submit an affidavit signed by Stocks. According to the motions, which were corroborated by the deposition of an attorney who attended the hearing, Judge Rudd, without having heard testimony from Stocks, tossed the affidavit back and said, "If Mr. Stocks were here I wouldn't believe him anyway." While this version of what occurred is disputed, the truth of the movant's assertions of fact must be admitted for purposes of section 38.10. With respect to the legal sufficiency of the motions, we agree with the analysis of the issue by the district court of appeal:
Respondents have presented two general arguments in rebuttal to the claims for relief made in the petition. First, they seek to characterize the judge's remarks as either those announcing an adverse judicial ruling or as reflecting the mental impressions and opinions formed during the course of the proceedings. These are not sufficient grounds for disqualification, see Gieseke v. Grossman, 418 So.2d 1055 (Fla. 4th DCA 1982); Mobil v. Trask, 463 So.2d 389 (Fla. 1st DCA), review denied, 476 So.2d 674 (Fla. 1985). We reject these arguments and find the trial judge's remarks more analogous to those described in Deauville Realty Co. v. Tobin, 120 So.2d 198 (Fla. 3d DCA 1960), cert. denied, 127 So.2d 678 (Fla. 1961), where it was held that a statement by the judge that he feels a party has lied in a case generally indicates a bias against the party. As in Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981), we find that the motion and accompanying affidavit support a conclusion that the movant has a well-founded fear he will not receive a fair trial at the hands of the judge. See also LeBruno Aluminum Co. v. Lane, 436 So.2d 1039 (Fla. 1st DCA 1983), review dismissed, 450 So.2d 487 (Fla. 1984); Irwin v. Marko, 417 So.2d 1108 (Fla. 4th DCA 1982).
547 So.2d at 960 (footnote omitted). Thus, we hold that the motions should have been granted and that Judge Rudd is disqualified further to act in these proceedings.[7]
Accordingly, we approve the decisions below but disapprove the district court of appeal's interpretation of section 38.10.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
NOTES
[1] Except where otherwise indicated by the context of this opinion, all references to Brown and Stocks shall include corporations owned or controlled by them which are also parties to the several suits.
[2] Brown and Stocks are engaged in other related lawsuits that are not the subject of these petitions.
[3] The record contains nothing to indicate why other second circuit judges may have disqualified themselves.
[4] Section 38.10 was originally enacted in this form as section 1, chapter 9276, Laws of Florida (1923), and section 38.02 was originally enacted as section 3, chapter 16053, Laws of Florida (1933).
[5] Because section 38.10 is vulnerable to the possibility of judge-shopping, it was logical for the legislature to make it more difficult to effect a second disqualification under that statute. However, because the grounds specified under section 38.02 so clearly justify disqualification and because the truth of the movant's allegations can be tested, there was little reason to make it harder to disqualify a second judge under section 38.02.
[6] The district court of appeal concluded that the motion had been filed under section 38.10, but in light of our disposition of these cases, it makes no difference which statute was involved.
[7] We hasten to add that our holding should not be construed to mean that a judge is subject to disqualification under section 38.10 simply because of making an earlier ruling in the course of a proceeding which had the effect of rejecting the testimony of the moving party. At the very least, before section 38.10 can be successfully invoked in this context, there must be a clear implication that the judge will not believe the complaining party's testimony in the future.